## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NIKKI NEUENDORF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-CV-0086-CVE-MTS |
| | ) | |
| GREG FAXON, Individually, and in his | ) | |
| capacity as a City of Catoosa police officer; | ) | |
| JAMES KINSINGER, Individually, and in his | ) | |
| capacity as a City of Catoosa police officer; and | ) | |
| CITY OF CATOOSA, OKLAHOMA, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are two motions to dismiss, one for failure to state a claim filed by defendants Greg Faxon and James Kinsinger (Dkt. # 22), and one for lack of jurisdiction and failure to state a claim filed by defendant the City of Catoosa, Oklahoma (Dkt. # 23). Plaintiff brought this action alleging five claims resulting from her arrest by Sergeant Greg Faxon and Officer James Kinsinger, who are law enforcement officials with the Catoosa Police Department. Dkt. # 2; Dkt. # 31. Plaintiff alleges that during the course of her arrest for public intoxication, for which charges were later dismissed, both defendant officers placed her arms behind her back, and together they jerked both of her arms upwards to place her in handcuffs, breaking her right humerus and causing her pain and injuries for which she has had extensive surgery. Dkt. # 2, ¶ 16. Plaintiff argues that she was refused medical attention until an unreasonable length of time after she had suffered the injury. Id. ¶ 19. Plaintiff now alleges five claims: one claim for violations of 42 U.S.C. § 1983 against all defendants (count one); one claim for common law false arrest against all defendants (count two); one claim for negligence against Catoosa (claim three); one claim for intentional

infliction of emotional distress by extreme and outrageous conduct against the defendant officers (count four); and one claim of assault and battery against the defendant officers (count five). Dkt. # 31, ¶¶ 13-32. The defendant officers moved to dismiss plaintiff's complaint on the ground that plaintiff fails to state a claim upon which relief may be granted in that she fails to allege sufficient facts as to both her § 1983 claim and state law tort claims. Dkt. # 22, at 12-27. They also argue that even if plaintiff states a valid claim on any of the alleged counts, the defendant officers are entitled to qualified immunity and are statutorily immune from suit in their official capacities for the state law tort claims. Id. at 20-22. Catoosa also moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6) in that she fails to state a claim against the city. Dkt. # 23, at 10-22. Moreover, even if plaintiff is found to have made a valid state law tort claim against Catoosa, it also asserts that this Court lacks subject-matter jurisdiction to consider plaintiff's state law tort claims pursuant to Federal Rule of Civil Procedure 12(b)(1) because her claims are barred by the Oklahoma Governmental Tort Claims Act ("OGTCA"). Id. at 17-20.

## I.

On March 12, 2023, plaintiff was arrested for public intoxication and resisting arrest. Dkt. # 2, ¶ 15. Sergeant Faxon and Officer Kinsinger were dispatched to a residence in Catoosa where plaintiff claims she resided with her parents. Id. ¶ 22. After the officers arrived at the residence they spoke with plaintiff while she was standing on her parents' property. Id. Plaintiff alleges that both defendant officers "forced her to move off her private property and across the street onto public property, so they could arrest her for public drunk." Id. Once she was on public property, both defendant officers placed plaintiff under arrest for public intoxication, handcuffing her and then "jerk[ing] both of her arms up high enough her hands were near her neck, [which] . . . broke her right

humerus/arm and [caused her to] cr[y] out in pain." Id. ¶ 16.   Plaintiff states that although she "cried out in pain and told [Sergeant] Faxon and [Officer] Kinsinger they had broken her arm, they refused to take off the handcuffs."   Id. ¶ 17.   Despite her pleas, they "left her on the ground, with her hands cuffed behind her" and "refused to get her medical care." Id.

Following plaintiff's arrest, she underwent surgery for a broken bone, which required the installation of two plates and fourteen screws in her arm, and she experienced lasting nerve damage that she asserts resulted from the officers' actions during her arrest.  Id. ¶ 16.  On February 2, 2024, plaintiff submitted a tort claim notice to Catoosa, providing formal notice of her claims against the city.  Dkt. # 23-2, at 3-4.   On February 16, 2024, plaintiff filed suit against all three defendants in Rogers County District Court.  Dkt. # 23-3, at 1-2.  On June 18, 2024, the charges against plaintiff for public intoxication and resisting arrest were dismissed with costs.  Dkt. # 22-1, at 2; Dkt. # 23-2, at 2.  Plaintiff alleges that neither defendant officer was ever "disciplined []or punished in any way for breaking . . . [p]laintiff's arm."  Dkt. # 2, ¶ 18.  Plaintiff filed this action on February 22, 2025. Dkt. # 1.  On April 16, 2025, both defendant officers filed a motion to dismiss for failure to state a claim.  Dkt. # 22.  On April 21, 2025, Catoosa filed a motion to dismiss.  Dkt. # 23.  Plaintiff responded to both motions (Dkt. # 25; Dkt. # 34), and all three defendants replied (Dkt. # 35; Dkt. # 38).  Plaintiff also filed a notice of supplemental authority, seeking to draw the Court's attention to the subsequently-decided case, Jolliff v. Rogers County Sheriff's Department, No. 24-CV-0065-JCG-SH, 2025 WL 1570005 (N.D. Okla. June 3, 2025).  Dkt. # 41.  To that notice, defendants responded (Dkt. # 42), plaintiff replied (Dkt. # 43), and, with the Court's leave, defendants filed a sur-reply (Dkt. # 48).

3

## II.

### A.  Motion to Dismiss Under 12(b)(6)

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted.  To survive a motion under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Tenth Circuit has interpreted the plausibility requirement to mean that if the allegations contained in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Robbins v. Okla. ex. rel. Dep't of Hum. Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570).  At the motion to dismiss stage, the allegations must "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim to relief."  Id. (footnote omitted).  Put differently, for a claim to survive a Rule 12(b)(6) motion, there must be "more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."  Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly, 550 U.S. at 555); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) ("A motion to dismiss under Fed. Rules Civ. Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient

to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). The facts alleged "must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2004)). For the purposes of making a dismissal determination, a court must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the claimant. Iqbal, 556 U.S. at 678-79.

**B. Motion to Dismiss Under 12(b)(1)**

Rule 12(b)(1) allows a party to raise the defense that the court lacks subject-matter jurisdiction over some or all of a plaintiff's claims. "Federal courts are courts of limited jurisdiction," empowered to hear "only those cases . . . entrusted to them under a jurisdictional grant by Congress." Henry v. Off. of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994). It is the "party invoking federal jurisdiction [who] bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998). The Tenth Circuit has recognized two main forms of challenges under Rule 12(b)(1): "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting Maestas v. Lujan, 351 F.3d 1001, 1013 (10th Cir. 2003)). In the former case, a court reviews the facts alleged in the complaint as true, akin to the standard applied to a Rule 12(b)(6) motion. Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002). By contrast, in the latter case,

a court "may not presume the truthfulness of the complaint's factual allegations," and it is afforded "wide discretion" to consider evidence extrinsic to the complaint to determine whether it maintains subject-matter jurisdiction.  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  Unlike a facial attack, a factual attack permits the court to refer to extrinsic evidence in reaching its determination without converting the motion to a Rule 56 motion.  Id.  The party challenging jurisdiction may "challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court."  New Mexicans for Bill Richardson v. Gonzales, 64 F.4th 1495, 1499 (10th Cir. 1995).

## C.  Consideration of Extrinsic Evidence

When a court relies on material outside of the pleadings before it, it is obligated to treat a 12(b)(6) motion as a motion for summary judgment, and failure to do so amounts to reversible error.  Foremaster v. City of St. George, 882 F.2d 1485, 1491 (10th Cir. 1989); Torres v. First State Bank of Sierra Cnty., 550 F.2d 1255, 1257 (10th Cir. 1977); Becher v. United Healthcare Servs., 374 F. Supp. 3d 1102, 1106 (D. Kan. 2019).  It is for this reason that a court deciding a motion to dismiss is typically unable to consider matters beyond the four corners of the complaint.  Tal v. Hogan, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); Fuqua v. Santa Fe Cnty. Sheriff's Off., 157 F.4th 1288, 1297 (10th Cir. 2025).  In this case, the parties have attached to their motions, responses, and replies, various types of extrinsic evidence of which they ask the Court to take judicial notice.  See, e.g., Dkt. # 22, at 19 (defendants Sergeant Faxon and Officer Kinsinger seeking judicial notice of the docket sheet from the related criminal proceeding, Dkt. # 22-1, and an affidavit by Officer Kinsinger, Dkt. # 22-2); Dkt. # 23, at 18 (defendant Catoosa seeking judicial notice of the related criminal proceeding, Dkt. # 23-1, plaintiff's tort claim notice to the city, Dkt. # 23-2, the docket sheet from

plaintiff's related state court claim, Dkt. # 23-3, and the same affidavit by Officer Kinsinger, Dkt. # 23-4); Dkt. # 26 (plaintiff filing a notice of conventional filing containing a document that she styles as Dkt. # 25-1, a flash drive video of footage created by Officer Kinsinger's body-worn camera); Dkt. # 34-1 (plaintiff attaching a Rule 56(d) affidavit by plaintiff's counsel).

### 1. Extrinsic Evidence Supporting and Rebutting the Rule 12(b)(6) Motions

Despite this general bar on a court's consideration of extrinsic evidence at the motion to dismiss stage, a court may take judicial notice of certain facts without treating the motion to dismiss as a motion for summary judgment. Tal, 453 F.3d at 1264 n.24. Judicial notice of certain facts is permitted so long as those facts are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned" and are therefore "not subject to reasonable dispute." FED. R. EVID. 201(b); Fuqua, 157 F.4th at 1298. Judicial notice is appropriate when "a party requests it and the court is supplied with the necessary information." Fuqua, 157 F.4th at 1298 (quoting FED. R. EVID. 201(c)(2)). Documents of which a court takes judicial notice "may only be considered to show their contents, not to prove the truth of matters asserted therein." Tal, 453 F.3d at 1265 n.24 (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)). Here, all defendants request that the Court take judicial notice of the related criminal docket sheet in Oklahoma v. Neuendorf, No. CM-2023-249 (Okla. Rogers Cnty. Jan. 29, 2025) and have attached a copy of it to their motions. Dkt. # 23, at 8 n.1; Dkt. # 22, at 11 n.2. Federal courts routinely "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979); see also Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010). On these bases, and because

plaintiff's complaint relates directly to the underlying criminal docket sheet, the Court takes judicial notice of what is shown in the Rogers County District Court docket in <u>Oklahoma v. Neuendorf</u>, No. CM-2023-249 (Okla. Rogers Cnty. Jan. 29, 2025).

Next, defendants Sergeant Faxon and Officer Kinsinger ask the Court to take judicial notice of an affidavit of Officer Kinsinger. Dkt. # 22, at 18-20 (citing Dkt. # 22-2). Defendants argue that the affidavit relates to plaintiff's arrest, which is central to her claim and therefore incorporated into <u>Oklahoma v. Neuendorf</u>. <u>Id.</u> at 19. On this point, defendants misstate the law as to what a court may consider in making its findings on a motion to dismiss. As discussed above, judicial notice is appropriate for facts that are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned" and are therefore "not subject to reasonable dispute." FED. R. EVID. 201(b); <u>Fuqua</u>, 157 F.4th at 1298. A defendant officer's affidavit outlining his bases for determining that there was probable cause for an arrest, offered in a case in which the existence of probable cause is at issue, fits squarely into the definition of "subject to reasonable dispute." To be sure, judicial notice is inappropriate in this instance.

Besides judicial notice, the bar on a court's consideration of documents beyond the complaint at the motion to dismiss stage has three exceptions recognized in the Tenth Circuit; in deciding a motion to dismiss, a Court may also consider "documents that a plaintiff (1) attaches to [his] complaint; (2) incorporates by reference in [his] complaint; or (3) refers to in [his] complaint that are central to [his] complaint and indisputably authentic." <u>Fuqua</u>, 147 F.4th at 1297 (alterations in original) (quoting <u>Cuervo v. Sorenson</u>, 112 F.4th 1307, 1312 (10th Cir. 2014)). Although the affidavit may relate to plaintiff's arrest and to certain entries in the criminal docket of which the

8

court takes judicial notice (but does not consider the truth of any facts asserted therein), the complaint neither has attached to it, nor incorporates by reference, nor centrally relies upon, nor references Officer Kinsinger's affidavit.  See Dkt. # 2.  Simply put, the affidavit is central not to plaintiff's claims but rather to defendants' theories of defense, which is not a valid exception to the bar on extrinsic evidence at the motion to dismiss stage.  See Burke v. Holdman, 750 F. App'x 616, 522-23 (10th Cir. 2018) (unpublished table opinion);[1] United States ex rel. Daron Street, M.D. v. Genentech, Inc., No. 17-CV-293-GKF-JFJ, 2024 WL 1143513, at *8 (N.D. Okla. Mar. 14, 2024); Becher, 374 F. Supp. 3d at 1105 ("At the motion to dismiss stage, the court cannot properly consider extrinsic evidence that isn't central to a plaintiff's claim.  This is the rule even if the extrinsic evidence is central to the defendant's 'theories of defense.'"); Tucker v. Allstate Ins. Co., No. 25-1267-BGS, 2026 WL 110398, at *2 (D. Kan. Jan. 14, 2026).  Because judicial notice is inappropriate and none of the exceptions recognized in the Tenth Circuit applies, the Court does not consider or base its findings on any facts contained in Officer Kinsinger's affidavit in reaching its determination as to the motions to dismiss before it.

Next, in her responses to defendants' motions, plaintiff both attaches and makes reference to video footage from a body-worn camera worn by Officer Kinsinger that was recording during plaintiff's arrest.  See, e.g., Dkt. # 25, at 9-13, 22, 25 n.7; Dkt. # 26; Dkt. # 34, at 7-9, 12, 14, 18, 24, 26, 28, 32.  Plaintiff's original complaint does not explicitly reference or include as an attachment the video footage; however, as the Court has previously observed, plaintiff states that she recites in her complaint the events recorded in the video.  Dkt. # 30, at 1; Dkt. # 29, at 1.  Although a court

---

[1]    Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

may consider body-worn camera video in reaching its conclusions on a motion to dismiss without converting it to a motion for summary judgment, the Tenth Circuit has warned that in the context of "dash- and body-camera videos," the contents may be "subject to reasonable dispute," such that the Court would be in a position to "weigh evidence and make factual findings," which is wholly inappropriate when ruling on a motion to dismiss." Fuqua, 157 F.4th at 1299. At this stage, the Court's central role remains to "assess whether the plaintiff's complaint is legally sufficient to state a claim for which relief may be granted"; therefore, it "assume[s] the truth of the plaintiff's factual allegations" contained within the four corners of the complaint and finds that it need not take judicial notice of the body-worn camera footage offered by plaintiff. Id. To the extent that plaintiff's responses to the motions before the Court contain facts not alleged in her complaint, the Court "confin[es] [its] review to the allegations of the complaint," disregarding new factual allegations introduced first in her response to defendants' motions to dismiss. Jojola v. Chavez, 55 F.3d 488, 494 (10th Cir. 1995) (alterations in original) (quoting Doyle v. Okla. Bar Ass'n, 998 F.2d 1559, 1566 (10th Cir. 1993)).

Finally, attached to plaintiff's response is a Rule 56(d) affidavit of her attorney. Dkt. # 34-1. Therein, counsel requests that the pending motions to dismiss (Dkt. # 22; Dkt. # 23) "be held in abeyance and he be allowed discovery and to supplement the responses to the pending motion[s] after discovery is completed." Id. at 3. Catoosa raises the argument that this should be disregarded, as unsuitable for a response to a Rule 12(b)(6) motion to dismiss, as Rule 56 relates to summary judgment, which it has not moved for at this time. Dkt. # 38, at 10 n.5. On this point, the Court agrees that consideration of any facts asserted in the affidavit are inappropriate for it to consider at this stage. The affidavit is not judicially noticeable nor is it attached to plaintiff's complaint,

referenced in her complaint, or indisputably authentic and central to her complaint. <u>See</u> <u>Fuqua</u>, 147 F.4th at 1297.

The amount and scope of evidence presented by the parties leads the Court to conclude that this is a hybrid case. The Court is able to rule on the motions to dismiss as to several of plaintiff's claims based solely on the arguments before it and the sufficiency of plaintiff's complaint. However, as to the remaining claims, it is clear from the briefing on defendants' motions to dismiss that the parties intend for the Court to consider documents extrinsic to the plaintiff's complaint in ruling on the motions. Upon review of the arguments properly raised, as to those remaining claims, the Court finds it necessary to consider material outside the pleadings in ruling on defendants' motions to dismiss. Therefore, except as to the claims discussed below, which the Court dismisses on the basis of the sufficiency of the complaint and the arguments before it, the Court will treat defendants' motions on the remaining claims as motions for summary judgment under Rule 56. <u>See</u> Fed. R. Civ. P. 12(d); <u>Paper, Allied-Indus., Chem & Energy Workers Int'l Union v. Cont'l Carbon Co.</u>, 428 F.3d 1258, 1292 (10th Cir. 2005).

## 2. **Extrinsic Evidence Supporting and Rebutting Subject-Matter Jurisdiction**

Unlike a Rule 12(b)(6) motion, in the context of a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, when a party facially attacks the facts on which subject-matter jurisdiction is based, a court is at liberty to consider and weigh evidence extrinsic to the pleadings in order to satisfy itself as to the existence of its jurisdiction over the case. <u>Holt</u>, 46 F.3d at 1003; <u>Tafoya v. U.S. Dep't of Just.</u>, 748 F.2d 1389, 1390 (10th Cir. 1984) ("Insofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, <u>sua</u> <u>sponte</u>, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings and the court is

not bound by the acts or pleadings of the parties."). Catoosa[2] factually challenges plaintiff's claim that she "has fully complied with the procedural requirements and time limitations of presenting a claim under the [OGTCA]," Dkt. # 2, ¶ 5, arguing that because plaintiff failed "to comply with the OGTCA's mandatory notice prerequisites prior to filing her [state court] lawsuit, this Court's jurisdiction is not invoked," Dkt. # 23, at 18-19. In support of its argument, Catoosa relies on and attaches to its motion the following evidence supporting its challenge to plaintiff's ability to establish subject-matter jurisdiction pursuant to the OGTCA: (1) plaintiff's tort claim notice, and (2) the docket sheet from plaintiff's state court lawsuit. Dkt. # 23, at 18 (citing Dkt. # 23-2; Dkt. # 23-3). Because Catoosa's challenge to plaintiff's ability to establish subject-mater jurisdiction is a factual attack on the Court's ability to exercise its jurisdiction, the Court will consider this extrinsic evidence and will refrain from presuming the truthfulness of the allegations contained in her complaint regarding her compliance with the jurisdictional statute at issue.

## III.

Before the Court are two motions to dismiss. In both motions, defendants assert that plaintiff fails to state a claim upon which relief may be granted as to all of her claims and therefore they merit dismissal under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 22, at 12-26; Dkt. # 23, at 10-22. With respect to plaintiff's claim arising under § 1983 claim (claim one), the defendant officers invoke the doctrine of qualified immunity and assert that plaintiff has failed to meet her burden on

---

[2]     The defendant officers also raise an argument under the OGTCA in their motion to dismiss; however, their arguments differ from Catoosa's as they raise those arguments under Rule 12(b)(6) not 12(b)(1). Dkt. # 22, at 22-23. However, even in the absence of a motion to dismiss for lack of subject-matter jurisdiction, the Court retains an obligation to verify its jurisdiction and can dismiss a matter at any time once it learns that it lacks such jurisdiction under Rule 12(h)(3).

both required showings to overcome this doctrine.  Dkt. # 22, at 12-22.  First, plaintiff has failed show that there was a violation of a constitutional right, and even if the she has met her burden on that first showing, id. at 12-20, she has not sufficiently shown that the constitutional violation or violations were clearly established at the time of her arrest, id.  at 20-22.  Also with respect to the § 1983 claims, Catoosa argues that plaintiff failed to plead sufficient facts to show that an official committed a constitutional violation on the same grounds as the defendant officers argue, Dkt. # 23, at 8, and even if plaintiff did meet her burden as to the first showing, she failed to allege sufficient facts to show that she was harmed by a city policy, custom, or practice.  Dkt. # 23, at 12-17.

With respect to the state law tort claims, Catoosa seeks dismissal of the two state law tort claims against it, for false arrest (count two) and negligence (count three), under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction because plaintiff's claims are barred by the OGTCA.  Dkt. # 23, at 17-22.  The defendant officers also move to dismiss plaintiff's state law tort claims against them, for false arrest (count two), intentional infliction of emotional distress (count four), and assault and battery (count five), on the basis that the officers are exempt from liability under the OGTCA as employees of the state or political subdivision who were acting within the scope of their employment.  Dkt. # 22, at 22-27.  Moreover, they argue her claims must be dismissed because she has failed to affirmatively show that the officers lacked probable cause in enacting her arrest, id. at 23-24, and she has not alleged sufficiently particular facts to survive a motion to dismiss as to the remainder of her tort claims, id. at 23-27.  The Court first analyzes the claims for which it grants defendants' motions to dismiss.

**A.  State Law Tort Claims Against Catoosa (Counts Two and Four)**

The state of Oklahoma has adopted statutes to shield itself, its political subdivisions, and its employees from liability for all torts.  OKLA. STAT. tit. 51, § 152.1.  The OGTCA, however, leaves open one avenue by which a plaintiff may seek remedy for tort claims against the state and its subdivisions, under which Oklahoma has consented to subject itself to liability under specific circumstances.  Id. §§ 156-57.  Catoosa raises a motion to dismiss under Rule 12(b)(1), that the Court lacks subject-matter jurisdiction, on the basis that plaintiff failed to comply with the filing requirements of the OGTCA and therefore her claims are time barred.  Under the OGTCA, once a claimant complies "with the time-limited procedural steps in §§ 156 and 157, the state's consent to be sued is manifest, the sovereign immunity bar is removed, and a judicial remedy for enforcement of the tort claim against the state or political subdivision may be maintained."  Cruse v. Bd. of Cnty. Comm'rs of Atoka Cnty., 910 P.2d 998, 1002-03 (Okla. 1995).  Section 157(A) of the OGTCA dictates that a plaintiff seeking to bring suit for a tort claim"may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part."  A claim is determined to be "denied" if "the state or political subdivision fails to approve the claim in its entirety within ninety (90) days." Id.

Plaintiff alleges that she "has fully complied with the procedural requirements and time limitations of presenting a claim under the [OGTCA], and this action is timely filed."  Dkt. # 2, ¶ 5. Plaintiff fails to allege how she has complied with the "time limitations of presenting a claim under the [OGTCA]." Id.  By contrast, Catoosa has offered evidence, which the Court considers pursuant to Catoosa's factual attack on plaintiff's ability to assert the Court's subject-matter jurisdiction, see supra, that plaintiff sent a letter, putting the city on formal notice of her tort claim on February 2,

14

2024. Dkt. # 23-2, at 1; Dkt. # 23, at 18.  Under § 157(A).  Based on this letter, the city would have had until May 2, 2024 to consider and act on plaintiff's claim, after which date the claim would have been deemed "denied" and she would have been eligible to bring any tort claims against Catoosa. Catoosa also offers evidence that plaintiff filed suit in Rogers County District Court asserting the same claims against the same defendants as in this case, in Neuendorf v. Faxon, No. CJ-2024-81 (Okla. Rogers Cnty. Aug. 28, 2024).  Dkt. # 23-3, at 1, 4.  Plaintiff filed suit in Rogers County on February 16, 2024, fourteen days after she submitted her notice to the city and prior to receiving notice that her claim had been denied, as well as before the end of the 90-day window in which the city would have had the opportunity to act and consider plaintiff's claim before it was deemed "denied."[3]  Catoosa argues that plaintiff filed her Rogers County District Court claim prematurely, and in doing so she failed to comply with the statutory requirements set forth in the OGTCA, barring suit here.

Under Oklahoma law, a premature tort claim that was filed before the 90-day review period cannot ripen into a timely claim without remediation, usually by "ref[iling] the action after the 90-day period expires and before the 180-day limitation expires."  Hathway v. State ex rel. Med. Rsch. & Tech. Auth., 49 P.3d 740, 743 (Okla. 2002).  In addition to providing that a suit must be commenced only after a claim has been denied, the OGTCA also bars a litigant from bringing suit more than 180 days after that denial.  OKLA. STAT. tit. 51, § 157(B).  As the Oklahoma Supreme Court has noted, the "expiration of the 180-day time period in § 157(B) operates to bar judicial enforcement of the claim."  Shanbour v. Hollingsworth, 918 P.2d 73, 75 (Okla. 1996); see also

---

[3]     Although Catoosa does not include this argument, the Court also notes that the instant matter was filed on February 22, 2025, over a year after plaintiff sent her notice to the city.  See Dkt. # 2.

Kiddy ex rel. B.K. v. Watts Pub. Sch., No. 24-CV-237-DES, 2025 WL 1928726, at *5 (E.D. Okla. July 14, 2025). Catoosa argues that even if plaintiff's claim was deemed "denied" as of the 90-day mark after her tort claim notice submission, on May 2, 2024, the 180 day window in which she could have corrected any error made by her premature filing to render her claim timely has long elapsed, and plaintiff both failed to take corrective action in the Rogers County case and failed to file a new case within the 180-day window. Dkt. # 23, at 19-20. In essence, because plaintiff failed to cure the jurisdictional defect from prematurely filing suit in Rogers County District Court and because she failed to file the case before this Court within the statutorily allotted window post-denial, she is out of compliance with the OGTCA, and therefore suit against Catoosa is barred as to any state law tort claims. Plaintiff offers no argument or explanation on this issue in her response to Catoosa's motion to dismiss. Dkt. # 34.

As the party invoking this Court's jurisdiction, plaintiff bears the "burden of establishing subject matter jurisdiction." Port City Props. v. Union Pac. R.R. Co., 518 F.3d 1186, 1189 (10th Cir. 2008). Plaintiff's conclusory allegation that she complied with the requirements of the OGTCA, including the timing requirements, fails to fulfill her burden given the evidence before the Court. The Court concludes that neither the Rogers County case nor this case was filed within the window afforded by the OGTCA, beginning when her claim was denied (or 90 days after she filed her notice) and ending 180 days after that date. Plaintiff has not met her burden to establish that this Court has subject-matter jurisdiction over plaintiff's state law tort claims based on plaintiff's failure to comply with the timing requirements of the OGTCA. Therefore, the Court grants Catoosa's motion under Rule 12(b)(1), and dismisses the claim for negligence (count three) and partially dismisses the claim for false arrest against Catoosa (count two).

16

**B. State Law Tort Claims Against the Defendant Officers**

Although the defendant officers have not raised a motion under Rule 12(b)(1), "[f]ederal [c]ourts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction 'at any state of the litigation.'" 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)); FED. R. CIV. P. 12(h)(3). The OTGCA bars "an employee of the state or political subdivision acting within the scope of his employment" from being named as a defendant in an action alleging tort liability. OKLA. STAT. tit. 51, § 153(C); see Nail v. City of Henryetta, 911 P.2d 914, 916 (Okla. 1996). The OGTCA defines "scope of employment" as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned . . ." OKLA. STAT. tit. 51, § 152(13). If the employee acted "maliciously, or in bad faith," he or she cannot have been acting within the scope of employment. Nail, 911 P.2d at 917. Not every intentional tort is outside the scope of employment. Id.

Other courts examining OGTCA claims in similar contexts have noted that whether the issue of what actions are taken within the scope of employment "may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss." Pendegraft v. Bd. of Regents of Okla. Colls., No. 18-CV-793-D, 2019 WL 3806639, at *6 (W.D. Okla. Aug. 13, 2019); Yelton v. Bd. of Cnty. Comm'rs of Can. Cnty., No. 21-CV-1001-G, 2024 WL 4406956, at *6 (W.D. Okla. Mar. 18, 2024); Melton v. Okla. ex rel. Univ. of Okla., 532 F. Supp. 3d 1080, 1092 (W.D. Okla. 2021). At this stage, the Court will not determine whether the acts the

defendant officers may have undertaken were within the scope of their employment. However, plaintiff pursues two of her tort claims against the defendant officers by alleging that they acted within the scope of their employment. See Dkt. # 2, ¶¶ 27-28 (claim two, stating that plaintiff pursues the false arrest claim against the officers in the scope of their employment under the OGTCA), 43 (claim four, noting that the assault and battery claims are brought under the OGTCA). As to those claims, on the basis that the defendant officer were acting within the scope of their employment, the Court finds that it lacks subject-matter jurisdiction and is thus unable to adjudicate those claims. Plaintiff notes, however, that she also pursues these claims on other grounds, namely that she seeks judgment against the officers individually for "intentional tortious conduct, not in good faith, that takes them outside the protections of the [O]GTCA." Id. ¶¶ 28, 41. The Court does not, therefore, dismiss the claims against the officers individually, alleged to have been acting outside of their capacities as employees of Catoosa.

## C. Section 1983 Claim (Count One) for Excessive Force Arising Under the Eighth Amendment

Plaintiff also seeks relief under 42 U.S.C. § 1983, which creates a cause of action against state officials for "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; Becker v. Kroll, 494 F.3d 904, 913 (10th Cir. 2007). To state a claim under § 1983, a plaintiff must make two showings: first, she must allege "the violation of a right secured by the Constitution and laws of the United States," and second, she must "show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). As the Court understands it, plaintiff argues that, with regard to the first element, she has alleged sufficient facts to show violations of her Fourth Amendment right to be free from

unlawful seizures because the officers exacted a warrantless arrest that lacked probable cause, and her Fourth, Eighth, and Fourteenth Amendment rights to be free from excessive uses of force because of the officers' denial of medical attention after they broke her arm.  Dkt. # 25, at 9-22; Dkt. # 2, ¶¶ 13-20.[4]

During an arrest, officers are empowered "to use some degree of physical coercion or threat thereof to effect it," Graham v. Connor, 490 U.S. 386, 396 (1989); however, "the degree of physical coercion that law enforcement officers may us is not unlimited," Cortez, 478 F.3d at 1125. Depending on the context in which force is used, an individual or municipality may run afoul of different constitutional rights, and as such excessive force claims "can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment[,] . . . each carr[ying] with it a very different legal test." Est. of Booker v. Gomez, 745 F.3d 405, 419 (10th Cir. 2014) (alteration in original) (quoting Porro v. Barnes, 624 F.3d 1422, 1325 (10th Cir. 2010)).  Plaintiff brings her claim for excessive force under the Fourth, Eighth, and Fourteenth Amendments.  See supra; Dkt. # 2, ¶¶ 14-20.  "The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard." Graham v. Connor,

---

[4]    Plaintiff's complaint does not straightforwardly state under which amendments each facet of her claim attaches.  In her allegations related to count one under § 1983, plaintiff alleges violations of "the 4th, 8th, and 14th Amendments." Id. ¶¶ 14, 20. Elsewhere in that section, plaintiff alleges that "breaking her arm . . . is an excessive force violation of the 4th and 14th Amendments, and the infliction of pain, while refusing medical care, is a violation of the 8th Amendment." Dkt. # 2, ¶ 19. In yet another place, she also alleges that the arrest "violated her right to be free from unreasonable and warrantless seizures under the 4th Amendment." Id. ¶ 15. Finally, she states that the manner of arrest that led to her injuries "violated her 4th Amendment right to be free from excessive use of force." Id. ¶ 16. The Court deduces that plaintiff attempts to allege one claim under the Fourth Amendment as to the right to be free from unlawful arrest, one claim under the Fourth Amendment as to the right to be free from excessive uses of force, one claim under the Eighth for refusing her medical care, and one claim under the Fourteenth Amendment also for refusing medical care.

490 U.S. 386, 394 (1989).  This is because courts analyzing the force applied consider the context—the fact that the force was applied during an arrest [as opposed to pretrial detainment]—in determining the maximum level of force permissible.  Cortez v. McCauley, 478 F.3d 1108, 1126 (10th Cir. 2007); United States v. Perdue, 8 F.3d 1455, 1464 (10th Cir. 1993) ("[P]olice have historically been able to use more force in making an arrest than in effecting an investigative detention.").

Eighth Amendment claims for excessive force apply to "prisoners already convicted of a crime who claim that their punishments involve excessive force" and are reviewed to determine "whether the 'force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically cause harm.'" Porro v. Barnes, 624 F.3d 1322, 1325-26 (10th Cir. 2010) (quoting Hudson v. McMillian, 503 U.S. 1, 6-7 (1992)).  The Tenth Circuit has previously held that "the use of excessive force on a pretrial detainee does not violate the Eighth Amendment's prohibition of cruel and unusual punishment, while it does constitute a Fourteenth Amendment deprivation of life or liberty without process; the Eighth Amendment does not apply until after an adjudication of guilt." Garcia v. Salt Lake City, 768 F.2d 303, 307 (10th Cir. 1985).  However, following detainment and prior to an adjudication, the Fourteenth Amendment's due process standard may be properly applied to "protect[] pretrial detainees against deliberate indifference to their serious medical needs." Id. As the defendant officers argue, all of plaintiff's allegations relating to excessive force under the Eighth Amendment occurred during the moments following the injury while she was still in handcuffs, at the scene of the arrest, and the arrest was ongoing. Dkt. # 22, at 13-14 (citing Est. of Booker v. Gomez, 745 F.3d 405, 418-19 (10th Cir. 2014)); Dkt. # 35, at 3; see Dkt. # 2, ¶¶ 17-20. Because plaintiff fails to allege—and likely cannot allege, as the record of which the Court took

judicial notice does not show that any adjudication of guilt occurred—that an excessive use of force occurred following an adjudication of guilt, plaintiff fails to raise a colorable claim under the Eighth Amendment alone for excessive use of force. Based on the facts as pled in plaintiff's complaint and the one criminal docket of which the Court takes judicial notice, plaintiff's claim against all defendants as to her Eighth Amendment right to be free of the use of excessive force fails to state a claim. Therefore defendants' motions (Dkt. # 22; Dkt. # 23), are granted as to the Eighth Amendment claim of count one.

Based on the foregoing, the Court dismisses the following claims: plaintiff's § 1983 claim under the Eighth Amendment (count one) against all defendants, false arrest claim (count two) against Catoosa, and negligence claim (count three) against Catoosa.

## IV.

The following claims remain: § 1983 claim (count one) against all defendants as to violations of the Fourth Amendment for unlawful arrest, the Fourth Amendment for excessive force, and the Fourteenth Amendment for excessive force; false arrest claim (count two) against the defendant officers not under the OGTCA; intentional infliction of emotional distress claim (count four) against the defendant officers not under the OGTCA; and assault and battery claim (count five) against the defendant officers not under the OGTCA. As to these claims, the evidentiary materials are so entwined with the parties' arguments, as evinced by plaintiff's submission of a Rule 56(d) affidavit (see Dkt. # 34-1) and the volume of extrinsic evidence submitted by both parties on which their arguments rest, that the Court finds it must treat the motions to dismiss the remaining claims as motions for summary judgment in order to fully consider the materials submitted and arguments based thereon. Therefore, the Court denies defendants' motions to dismiss as to the remaining

claims and treats the motions to dismiss as to these claims as motions for summary judgment under Rule 56.

**IT IS THEREFORE ORDERED** that the defendant officers' motion to dismiss (Dkt. # 22) is **granted** as to count one as pled under the Eighth Amendment and counts two, four, and five as to the officers as employees of the state.  The motion is **denied** on all other grounds.

**IT IS FURTHER ORDERED** that the City of Catoosa's motion to dismiss (Dkt. # 23) is **granted** as to one count one as pled under the Eighth Amendment and counts two and three against the city.  The motion is **denied** on all other grounds.

**IT IS FURTHER ORDERED** that, based on the parties' requests and the inclusion of external evidence that is not excluded by the Court under Rule 56(d), it is necessary to treat the motions to dismiss the remaining claims as motions to summary judgment.  Additional discovery is permitted as to the remaining claims only.  No later than ninety (90) days from the date of this order, or on or before **June 1, 2026**, the parties shall complete discovery as to the remaining claims. Twenty-one (21) days thereafter, or on or before **June 22, 2026**, defendants shall present any evidentiary materials, legal authority, and arguments not previously provided to support their motions.  Plaintiff shall respond, presenting any evidentiary materials, legal authority, and arguments not previously provided to support her response, twenty-one (21) days thereafter, or on or before **July 13, 2026**.  Finally, fourteen (14) days thereafter, or on or before **July 27, 2026**, defendants shall file any replies.

**IT IS SO ORDERED** this 2nd day of March, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE